## COMMONWEALTH vs. JEFFREY ANOLIK
### (and a companion case[1]).

No. 87-1353.

Hampshire.   October 12, 1988. — August 18, 1989.

Present: GREANEY, C.J., ARMSTRONG, & SMITH, JJ.

*Practice, Criminal*, Severance, Mistrial, Indictment, Duplicitous convictions. *Evidence*, Other offense, Relevancy and materiality, Privileged communication. *Search and Seizure*, Affidavit, Warrant. *Probable Cause. Attempt. Burning of Property.*

A judge did not err in refusing to sever the trial of a larceny indictment from the trial of other indictments against a defendant arising from the burning of a dwelling, where certain evidence relating to the defendant's involvement in acquiring the dwelling and in its subsequent burning was admissible, not only on the larceny indictment but also on the remaining indictments to show either an essential element of those offenses or to establish motive, plan or intent on the defendant's part [705-707]; furthermore, the judge was not required to declare a mistrial on the remaining indictments once he allowed the defendant's motion for a required finding of not guilty on the larceny indictment, where he promptly informed the jury of his action, withdrew a number of exhibits from the jury's consideration and, in his final instructions, admonished the jury to disregard any evidence that was not directly relevant to the remaining indictments [707-708].

Evidence at the hearing on a criminal defendant's pretrial suppression motion supported the judge's conclusion that the defendant had not established the falsity of certain statements in the affidavit filed in support of a warrant for a search of his home. [708-709]

At a criminal trial, the judge did not err in disallowing the defendant's claim of an attorney-client privilege as to certain documents, where the documents were not privileged communications because they were not intended to stop with the lawyer as a confidence, but were intended to be communicated to third persons or recorded in a registry of deeds. [709-710]

Dismissal of an indictment charging attempted arson was required, where the indictment failed to allege any overt act committed in furtherance of the attempt. [710-711]

[1] Commonwealth *vs.* Sheila Anolik.

A defendant charged, as the result of a single course of conduct, with both burning a dwelling house, in violation of G. L. c. 266, § 1, and burning property with intent to defraud an insurance company, in violation of G. L. c. 266, § 10, was properly convicted under both statutes, where each statute required proof of an additional fact which the other did not. [711-712]

INDICTMENTS found and returned in the Superior Court Department on September 25, 1984.

The cases were tried before *George C. Keady, Jr.*, J.

*Anthony M. Traini* for Sheila Anolik.

*John A. MacFadyen* of Rhode Island, for Jeffrey Anolik.

*Edward D. Etheredge*, Assistant District Attorney, for the Commonwealth.

SMITH, J. A Hampshire County grand jury returned six indictments against the defendant, Jeffrey Anolik (Jeffrey). The indictments charged him with (1) aiding, counseling or procuring and thereby causing Robert Baj and Sheila Anolik (Sheila) to burn the dwelling house of Elizabeth Nelson located in Worthington; (2) attempting to burn the same dwelling; (3) burning the Nelson dwelling with intent to defraud an insurer; (4) filing a false claim with intent to defraud an insurer; (5) receiving stolen property belonging to the insurer; and (6) larceny by a single scheme from Nelson of property over one hundred dollars (larceny indictment). Sheila, who is Jeffrey's mother, was charged in a single indictment with aiding and procuring an arson.

The defendants proceeded to trial before a jury. It was the Commonwealth's theory that Jeffrey, from the beginning of his relationship with Nelson, systematically undertook to defraud her of her property located in Worthington. During the course of that endeavor, according to the Commonwealth, Jeffrey enlisted the services of Sheila and Baj to commit arson, thereby enabling him to obtain the proceeds of Nelson's fire insurance policies. At the close of the Commonwealth's case, the judge granted Jeffrey's motions for required findings of

not guilty on the indictments for receiving stolen goods and larceny. Jeffrey was convicted by the jury on the remaining indictments. Sheila was found guilty on the only indictment against her. The defendants allege several errors which they claim require reversal of their convictions. We summarize the facts as they could have been found by the jury and then discuss the issues raised by the defendants.

In 1979, Nelson, a woman about sixty years of age, inherited her father's home, its contents, and over fifty acres in Worthington. In December 1981, she met Jeffrey, then age twenty-nine. They dated and went on some trips together. At that time, Nelson had placed the property in Worthington on the market for $65,000. Jeffrey was interested in purchasing the property, and in the summer of 1982 Nelson agreed to sell the property to him for $50,000 rather than the listed price of $65,000 because, according to Nelson, they were "so chummy." She placed her initials on a purchase and sale agreement. In that document, Jeffrey agreed to pay Nelson $7,500 in December, 1982, and the balance over a period of time.

Before purchasing the property, Jeffrey urged Nelson to increase her insurance coverage on the house and its contents. Nelson went along with the idea because the property was vacant and there had been "considerable vandalism there."[2] He also described a dream he had in which the house had burned. He suggested that its contents be removed and offered his house as a safe haven. She agreed, and Jeffrey, Sheila, and Baj moved several loads of furniture and smaller objects from the Worthington property to Jeffrey's house. Later, Jeffrey told Nelson that her items were now in his home.

In early November, Jeffrey asked Baj to burn the property in Worthington. He agreed and one night in November drove to the property with Jeffrey and Sheila. While they remained in the automobile, Baj went into the empty house and started

---

[2] As of April 9, 1982, her homeowner's policies provided coverage in the event of fire in the amount of $16,000 (structures) and $8,000 (contents). On November 4, 1982 — 23 days before the property was destroyed by fire — the policy was amended to provide coverage of $26,000 (structures) and $13,000 (contents).

a fire with some newspapers and a bottle of rum. The attempt to burn the house failed.

On November 27, 1982, Baj was in Jeffrey's store in North-ampton. Both defendants were present. Jeffrey asked Baj once again to burn the property in Worthington. Baj again agreed, and Sheila purchased two bottles of rubbing alcohol to start the fire. Baj and Sheila then drove to Nelson's house in Worth-ington.[3] Baj entered the house and started a fire with the alcohol. This time his efforts were successful and the house was almost completely destroyed.

After the fire, Nelson met with Attorney John Brady, Jef-frey's lawyer at that time, to discuss filing an insurance claim in regard to the fire. She was told by Brady that pursuant to the purchase and sale agreement which she had initialed during the summer, Jeffrey was to receive the proceeds of the fire insurance that she had on the Worthington property. After meeting with Brady and Jeffrey, Nelson, with the assistance of Jeffrey, prepared a list of items of personal property sup-posedly destroyed in the fire. The list was submitted by Brady to the insurance company for payment under the policy. Sub-sequently, several of the supposedly destroyed items were seized by the police from Jeffrey's home pursuant to a search warrant.[4]

During the succeeding months, Brady received $36,400 from the insurance company in regard to the fire. He directed Nelson to endorse and return the checks to him. In return, she received a total amount of $4,450. Jeffrey received $26,300 and Brady received $4,150 as a fee. Demolition expenses took care of the rest.

The original sales agreement and deed on the Worthington property had all been executed by the parties by December 24, 1982. However, Brady did not file those papers at the

---

[3] According to Baj, Jeffrey did not accompany them to the property in Worthington but instead drove to a friend's home in Connecticut.

[4] Nelson was the subject of an indictment charging her with filing a false claim with intent to defraud an insurance company for her role in helping Jeffrey to compile the list. That indictment was pending at the time of the defendants' trial.

registry of deeds because Jeffrey and Nelson were engaged in further negotiations concerning sale of that property. On April 18, 1983, Nelson signed a substitute agreement, prepared by Brady with Jeffrey providing most of the details. That agreement called for the transfer of over fifty acres of the land located in Worthington and $9,500 from Nelson to Jeffrey. Jeffrey promised in return to transfer back to Nelson two acres on which he would build a house for her. According to the agreement, Nelson would have a life interest in the house and in the two acres of land. There was a provision in the agreement that allowed Jeffrey to mortgage Nelson's life estate. In October, 1983, Nelson co-signed a note mortgaging her life estate and by February, 1984, Jeffrey had borrowed $30,000 on it.

We now discuss the issues raised by the defendants.

1. *Denial of defendants' motions for severance and for a mistrial.* Prior to their joint trial, both defendants filed motions to sever the trial of the indictment that charged Jeffrey with larceny by a single scheme from the trial of the other charges against them. They claimed that severance was warranted because the evidence to be introduced by the Commonwealth on the larceny indictment was inadmissible as to the other indictments and so prejudicial that a judge's limiting instructions would be of no avail. Further, they argued that the larceny indictment was "unprovable," that a motion for a required finding of not guilty on that indictment would be allowed at the close of the Commonwealth's case with the result that a mistrial as to the remaining indictments would undoubtedly be granted because of the prejudice caused by the evidence in support of the larceny indictment. The defendants' motions for severance were denied.[5] After the trial judge allowed

[5] Jeffrey's argument that the indictment charging him with larceny by a single scheme was "unprovable" was based on a claim that the facts alleged by the Commonwealth did not support that indictment. He claimed that there are only two fact patterns that support an indictment for a single scheme of larcenous behavior occurring over a period of time. They are, according to Jeffrey, when a defendant (1) falsely obtains property on different occasions over a period of time, but under the same continuing misrepresentation, or (2) uses the same modus operandi, over a period of time, to commit direct larcenies from the same person. Jeffrey claimed that neither fact situation was present there.

Jeffrey's motion for a required finding of not guilty on the larceny indictment, both defendants requested a mistrial. They advanced the same arguments employed by them at the hearing on their severance motions. These motions were also denied. Both defendants claim on appeal that the denial of their motions for severance and for a mistrial were improperly denied.[6]

A motion for relief from prejudicial joinder of indictments is addressed to the sound discretion of the trial judge. *Commonwealth* v. *Gallison*, 383 Mass. 659, 671 (1981). See Mass. R.Crim.P. 9(a),(c),(d), 378 Mass. 859 (1979). "The defendant bears the burden to show that prejudice will result from the failure to sever and that such prejudice is beyond the curative powers of the court's instructions." *Commonwealth* v. *Helfant*, 398 Mass. 214, 230 (1986).

The heart of the defendants' claim is that the trial of the larceny indictment with the trial of the other charges created a "seepage . . . of evidence not otherwise admissible" against them. See *Commonwealth* v. *Beneficial Fin. Co.*, 360 Mass. 188, 221 (1971), cert. denied sub nom. *Farrell* v. *Massachusetts*, 407 U.S. 910, and *Beneficial Fin. Co.* v. *Massachusetts*, 407 U.S. 914 (1972). In particular, they contend that the evidence as to Jeffrey's relationship with Nelson, including the various transactions involving the Worthington property, introduced in support of the larceny indictment would have been inadmissible at a separate trial of the other indictments. They argue that such evidence "depicted [Jeffrey] as a conniving seducer who had inveigled a lonely and much older woman to part with her property through false pretenses of love and possible marriage." Any questionable probative value of such evidence, they contend, was outweighed by its prejudicial impact.

Generally, "the prosecution may not introduce evidence that a defendant previously has misbehaved, indictably or not, for the purposes of showing his bad character or propensity to commit the crime charged, but such evidence may be admis-

[6] Sheila, in the consolidated brief filed by both defendants, does not make any separate argument as to how the denials of the motions for severance and for a mistrial affected her.

sible if relevant for some other purpose." *Commonwealth* v. *Helfant*, *supra* at 224. Such evidence is admissible when it tends to show common scheme, pattern of operation, plan, motive or intent. *Commonwealth* v. *Gallison*, *supra* at 672-673. "The admission of such evidence generally is 'a matter on which the opinion of the trial judge will be accepted on review except for palpable error.'" *Commonwealth* v. *Cordle*, 404 Mass. 733, 744 (1989), quoting from *Commonwealth* v. *Young*, 382 Mass. 448, 462-463 (1981).

The indictments other than the larceny and receiving stolen property charges all involved the burning of the Worthington property. Evidence as to the manner in which Jeffrey obtained possession of that property, the amount of money he paid for it, his advice to Nelson that she should increase the insurance on the property, and the division of the insurance proceeds after the fire was admissible, not only on the larceny indictment but also on the remaining indictments, to show either an essential element of those offenses or to establish motive, plan or intent on Jeffrey's part. Indeed, the relationship of Jeffrey with Nelson was inextricably intertwined with the events surrounding the burning of the Worthington property. See *Commonwealth* v. *Hoffer*, 375 Mass. 369, 373 (1978). Without evidence of that relationship, testimony relative to the remaining indictments would make little sense to the jury. Because the value of the evidence outweighed any prejudice that may have flowed from its introduction, it was admissible. See *Commonwealth* v. *Blow*, 362 Mass. 196, 201 (1972).[7]

The judge was not required to declare a mistrial on the remaining indictments once he allowed Jeffrey's motion for a required finding of not guilty on the larceny indictment. *Commonwealth* v. *Adorno*, 17 Mass. App. Ct. 252, 254 (1983). The judge promptly informed the jury of his action; a number

---

[7] In a footnote in the consolidated brief, Jeffrey also argued that the joinder for trial of the larceny indictment with the trial of the other indictments effectively deprived him of his right to testify in his defense on the other charges. In the affidavit that accompanied his motion for severance, Jeffrey failed to recite any prejudice. This was not the "convincing showing" of prejudice that is required. See *Commonwealth* v. *Williams*, 18 Mass. App. Ct. 945, 947 (1984).

of exhibits were withdrawn from the jury's consideration; and, as we have stated above, virtually all of the evidence admitted on the larceny indictment was directly relevant to the remaining indictments.

Further, the judge in his final instructions admonished the jury to disregard any evidence that was not directly relevant to the indictments still on trial. He expressly mentioned the indictments for larceny and receiving stolen goods and stated that the jurors were "not to concern [themselves] with any evidence which was introduced by the Commonwealth on either of those indictments, as that evidence affected those indictments." "Jurors are expected to follow instructions to disregard matters withdrawn from their consideration." *Commonwealth* v. *Cameron*, 385 Mass. 660, 668 (1982). The instructions were strong and forceful and "we must presume the jury followed them." *Commonwealth* v. *Helfant*, *supra* at 228.[8]

2. *Denial of Jeffrey's suppression motion.* The police obtained a warrant on September 8, 1984, to search Jeffrey's home for a number of items which they claimed were taken from Nelson's home prior to the fire, yet were listed on the insurance claim form as having been destroyed in the fire.[9] As a result of the search, the police seized several items from Jeffrey's home.

Prior to trial Jeffrey filed a motion to suppress the various items.[10] He claimed, among other things, that the affidavit in

---

[8] In his request for jury instuctions, Jeffrey asked the judge to inform the jury that they were not to be concerned with evidence concerning the 1982 agreement between Jeffrey and Nelson "and any facts concerning a life estate, the construction of a house, or the signing of a mortgage by . . . Nelson." The judge refused to give such a detailed instruction to the jury. As we state in the text, much of that evidence was admissible to show the relationship between Jeffrey and Nelson. Therefore, we find no abuse of the judge's discretion on the matter.

[9] The warrant authorized a search for the following property: "a large shaving stand with an oval mirror and marble shelf [approximately] 5½ - 6-feet high; a roll-top desk made of either mahogany or oak; large stand-up brass or copper lamps with shades; chairs of assorted styles; a violin in a black case; plastic bags containing linens; an assortment of silverware; [and] components of an old bed."

[10] Sheila, in the consolidated brief, joins Jeffrey in arguing this issue. There is nothing in the record that demonstrates that she ever filed a motion

support of the warrant contained "material factual inaccuracies . . . that the affiant knew were false or should have known were false." He also contended that the description in the warrant of the items to be seized lacked particularity. After a hearing at which the affiant testified, the judge issued a memorandum of decision in which he ordered a certain number of the seized items suppressed because they were not sufficiently described in the warrant. He denied the motion, however, in regard to other items seized under the warrant. The judge further ruled that Jeffrey failed to sustain his burden of establishing that certain of the statements contained in the affidavit were false, much less that the affiant falsified them intentionally or with reckless disregard for the truth.

We have carefully reviewed the judge's subsidiary findings and the record in regard to Jeffrey's claim that the affidavit contained false statements. We conclude that the findings of the judge were well supported by the evidence and there is no cause to disturb his ultimate findings.

Jeffrey raises several other issues pertaining to the search. He claims that the affidavit, even if timely, failed to establish probable cause to seize the items in question. Jeffrey also contends that of the items seized only two were named in the warrant. We have considered these claims and find no error.

3. *The admission of Brady's testimony.* When Brady was called by the Commonwealth to testify, Jeffrey raised the matter of the attorney-client privilege and moved that any testimony of Brady concerning their relationship be excluded. After a voir dire examination of Brady, Jeffrey's motion was denied. There was no error.

The substance of Brady's testimony pertained to real estate agreements which led to the transfer of property from Nelson

---

to suppress the evidence seized from Jeffrey's house. There is a passing reference in the brief that she "stayed" at the house. There is no reference in the brief where we can find that information. Therefore, on this issue, because there is nothing before us that shows that Sheila lived at Jeffrey's house or was present at the time of the search, we rule that she lacked the standing to challenge the search and seizure. *Commonwealth* v. *Mattos*, 404 Mass. 672, 680 (1989).

to Jeffrey and also to an insurance claim form filed with the insurance company concerning the fire. Those documents were intended for publication to third parties or for filing in the registry of deeds. Such documents are not privileged communications because they were not intended to stop with the lawyer as a confidence, but were meant to be passed along to third persons. *Commonwealth* v. *Goulet*, 374 Mass. 404, 419 (1978). See also *Drew* v. *Drew*, 250 Mass. 41, 44-45 (1924). E. Cleary, McCormick's Handbook of the Law of Evidence 91 (3d ed. 1984).

4. *The contents of the attempted arson indictment.* The indictment that charged Jeffrey with attempted arson stated in its entirety that, on November 15, 1982, he "did wilfully and maliciously attempt to set fire to or attempt to burn the dwelling house and contents of Elizabeth Nelson in Worthington." Jeffrey claims, on appeal, that he is entitled to dismissal of that indictment because it did not allege any overt act committed in furtherance of the attempt. He cites *Commonwealth* v. *Burns*, 8 Mass. App. Ct. 194, 196-197 (1979), and *Commonwealth* v. *Foley*, 24 Mass. App. Ct. 114, 115-117 (1987), as support for his argument.[11]

In *Burns*, the defendant was charged with attempted larceny of a motor vehicle. The complaint, however, did not allege the commission of any overt act by the defendant. The court noted that "a complaint [or indictment] must include an allegation of every element and fact that is essential for a conviction." *Burns, supra* at 195. "The offense [of attempt] is made out upon proof of a general intent to commit crime, and the doing of overt acts toward its accomplishment." *Commonwealth* v. *Cline*, 213 Mass. 225, 225 (1913). Therefore, because the

---

[11] Jeffrey did not raise this issue below. We have consistently held that an issue not presented at the trial level need not be considered on appeal. See *Royal Indemnity Co.* v. *Blakely*, 372 Mass. 86, 88 (1977). However, "[w]here an indictment has failed to charge a crime because it lacks an essential ingredient of the crime sought to be charged the court has no jurisdiction to convict the defendant." *Commonwealth* v. *Burns, supra* at 196. Therefore, because the issue involves subject matter jurisdiction, it can be raised for the first time on appeal. *Tosti* v. *Ayik*, 386 Mass. 721, 725 (1982).

overt act relied upon to support a charge of attempt is essential for a conviction, it "must be alleged in the complaint [or indictment] charging the crime." *Burns, supra* at 196-197. In accord is *Commonwealth* v. *Foley, supra* at 115. See also *Commonwealth* v. *Gosselin*, 365 Mass. 116, 121 (1974)("A charge of an attempt should set forth in direct terms that the defendant attempted to commit the crime, and should allege the act or acts done toward its commission").

The Commonwealth contends, however, that because the indictment charging Jeffrey with attempted arson was drawn pursuant to G. L. c. 266, § 5A, the above rule does not apply. That distinction escapes us. General Laws c. 266, § 5A, is in two parts. The first part states: "Whoever wilfully and maliciously attempts to set fire to, or attempts to burn, or aids, counsels, or assists in such an attempt to set fire to or burn [certain enumerated property] or whoever commits any act preliminary thereto or in furtherance thereof shall be punished . . . ." The second part of § 5A defines certain acts that make out an attempt under the statute if accompanied by the requisite intent. *Commonwealth* v. *Mehales*, 284 Mass. 412, 416 (1933).[12] Nothing in § 5A relieves the Commonwealth of the obligation to prove an overt act in order to obtain a conviction under the statute. "[W]e think the same principles apply to a charge of [attempted arson] as to charges of other attempts." *Commonwealth* v. *Gosselin, supra.* Therefore, we hold that the indictment charging Jeffrey with attempted arson was flawed because it did not allege the overt act. The judgment on that indictment is reversed, the verdict is set aside, and the indictment is to be dismissed.

5. *The lesser included offense issue.* Jeffrey contends that he cannot be convicted and sentenced for arson of a dwelling

---

[12] The second part of G. L. c. 266, § 5A, states as follows: "The placing or distributing of any flammable, explosive or combustible material or substance or any device in or against any building, structure or property mentioned in the foregoing sections in an arrangement or preparation with intent eventually to wilfully and maliciously set fire to or burn such building, structure or property, or to procure the setting fire to or burning of the same shall, for the purposes of this section, constitute an attempt to burn such building, structure or property."

house (G. L. c. 266, § 1), and also of and for arson with intent to defraud an insurance company (G. L. c. 266, § 10) on the ground that such convictions are duplicitous. He cites *Commonwealth* v. *Shuman*, 17 Mass. App. Ct. 441, 450-452 (1984), as support for his claim. In *Shuman*, the court held that arson of a building (G. L. c. 266, § 2) is a lesser included offense within arson of a building with intent to defraud an insurance company. The convictions were deemed duplicitous with the result that, at least upon the record before the court, one of the two convictions could not stand and the matter was remanded for resentencing. We hold that *Shuman* does not apply here.

"A single act may be an offence against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other." *Morey* v. *Commonwealth*, 108 Mass. 433, 434 (1871). See *Kuklis* v. *Commonwealth*, 361 Mass. 302, 306 (1972); *Salemme* v. *Commonwealth*, 370 Mass. 421, 423 (1976). In the case of burning a dwelling, there is required, in addition to a burning, independent proof that the target property was habitable as a dwelling. *Commonwealth* v. *DeStefano*, 16 Mass. App. Ct. 208, 214 (1983).[13] Burning insured property, under G. L. c. 266, § 10, requires independent proof that the property was insured. See *Commonwealth* v. *Cooper*, 264 Mass. 368, 371-372 (1928). Therefore, of the offenses here at issue, each has one or more elements not common to the other. Under the *Morey* standard they are distinct offenses, and a single course of conduct will sustain convictions for both. See *Commonwealth* v. *DeStefano*, supra at 215 n.4, 218 n.5.[14]

---

[13] Both defendants claim that the evidence was insufficient to establish that the destroyed building was a dwelling house as defined in G. L. c. 266, § 1. Their claim is without merit. There was ample evidence that there was electrical service to the dwelling and that it contained furniture, kitchenware, and food at the time of the fire. See *Commonwealth* v. *Murphy*, 1 Mass. App. Ct. 71, 75 (1973).

[14] Both the Commonwealth and Jeffrey agree that the sentence imposed in regard to G. L. c. 266, § 10, was illegal. Jeffrey received a sentence of

6. *Conclusion.* The judgment on the indictment charging Jeffrey with attempted arson is reversed. The sentence imposed on the indictment charging Jeffrey with burning property with intent to defraud an insurer is vacated and the matter is remanded to the Superior Court for resentencing. (See note 14). The judgments on the other indictments charging Jeffrey with various crimes are to stand. Judgment is affirmed on the indictment charging Sheila with aiding and procuring an arson.

*So ordered.*

six to nine years, suspended, to the Massachusetts Correctional Institution, Cedar Junction. The maximum sentence under the statute is five years.