NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

25-P-12

B-DUNZ, INC.[1]

vs.

THE BILINGUAL MONTESSORI SCHOOL OF SHARON.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

This action stems from a soured business relationship between the plaintiff, a landscaping company, and its client, the defendant school. The plaintiff's claims and the defendant's counterclaims were tried before a jury in the Superior Court. The judge entered directed verdicts and subsequently dismissed certain of the plaintiff's claims and the defendant's counterclaims, and the jury otherwise returned verdicts in the plaintiff's favor. After the defendant moved for judgment notwithstanding the verdict (JNOV) and for a new trial, the judge allowed the motion, in part, ordering a new

_____

[1] Doing business as Shoveltown Landscaping.

trial unless the plaintiff accepted a remittitur reducing the damages awarded by $2,000.  Otherwise, the judge denied the motion.  The plaintiff accepted the remittitur, the judge allowed the plaintiff's motion for costs, a new final judgment entered on April 19, 2024, and this appeal followed.

Because we (1) agree with the judge's rulings on the parties' motions for directed verdict and JNOV, (2) discern neither abuse of discretion nor other error in the judge's denial of the defendant's motion for a new trial, (3) are satisfied that the judge acted permissibly in limiting the defendant's use of evidence relating to insurance, (4) conclude that the defendant waived its objections to the judge's failure to give certain of its proposed jury instructions, and (5) are not persuaded that the judge abused her discretion in allowing the plaintiff's posttrial motion for costs, we affirm the judgment dated April 19, 2024.

Background.  We briefly summarize relevant procedural history and facts as the jury could have found them, reserving certain details for later discussion.  The plaintiff is a landscaping business founded and operated by Brian Donovan.  The defendant is a school owned by Linda Valentin.  In 2017, the defendant hired the plaintiff to do landscaping work.  The parties orally agreed that the plaintiff would perform snow removal for the defendant; Donovan prepared a written proposal

2

for the work, including a schedule of plowing fees, but no written contract was signed. During the winter of 2017 to 2018, the plaintiff plowed and, at Valentin's instruction, salted the school's parking area and walkways. Although the plaintiff billed the defendant for that work, there was an unpaid balance of $10,778 on the defendant's account by March 2018.

The parties' business relationship was complicated by damage to certain parts of the defendant's premises. In the fall, the plaintiff's employees had displaced the top of an ornamental fountain (fountain damage). While snowplowing during a storm, one of the plaintiff's temporary employees damaged an ornamental tree, hydrangeas, and some boxwoods in a corner of the school's parking lot (plowing damage). Additionally, Valentin claimed that the plaintiff had damaged a number of ornamental boxwoods, which she wanted the plaintiff to replace (boxwood damage). Donovan acknowledged that the plaintiff was responsible for the fountain and plowing damage, which he consistently told Valentin that the plaintiff would fix, but he denied that the plaintiff was responsible for the boxwood damage.

On March 26, 2018, Donovan met with Valentin in an effort to collect the unpaid balance for the plaintiff's landscaping and plowing work. During the meeting, Valentin prepared a written "agreement" (settlement agreement) that she and Donovan

3

then signed.  The settlement agreement documented the balance due to the plaintiff, the defendant's payment of $4,190 on March 26, and the defendant's agreement to pay the remaining amount due[2] "upon completion of all repairs and tree replacements."  A "List of damages" included in the settlement agreement identified outstanding work:  replacement of "perhaps half of the boxwood," repair of areas with gravel and mulch, and replacement of the fountain top.  Donovan agreed to the terms of the settlement agreement based on his understanding that the scope of the work was limited to replacement of the fountain top and repair of the plowing damage and that it would cost the plaintiff between $2,000 and $2,500.  Donovan and Valentin signed the settlement agreement, and Valentin made the initial payment of $4,190.

Immediately after the initial payment was made, however, Valentin made it clear to Donovan that she expected the plaintiff to make repairs to the defendant's property that were much more expansive and expensive than those to which Donovan had agreed when he signed the settlement agreement.  As a result, Donovan abandoned his efforts to negotiate a resolution

---

[2] The settlement agreement notes the outstanding amount as "$10,778," the amount paid on March 26 as "$4,190," and the balance to be paid on completion of the work as "$6,584."  The last figure represents a slight calculation error.

4

with the defendant.  On March 28, 2018, the plaintiff filed a small claim action against the defendant in the District Court, seeking the unpaid balance of $6,588 on the defendant's landscaping and plowing bills.  The plaintiff's small claim action was transferred to the regular civil docket and then to the Superior Court, where the plaintiff filed an amended complaint alleging breach of contract, breach of the implied covenant of good faith and fair dealing, and violation of G. L. c. 93A.  The defendant answered and counterclaimed for breach of contract, negligence, fraud, abuse of process, and violation of G. L. c. 93A.

The case went to trial before a jury.  As relevant to this appeal, the judge allowed the plaintiff's motion for a directed verdict in its favor on the defendant's counterclaim for abuse of process, dismissed the plaintiff's claim under G. L. c. 93A with the plaintiff's agreement, and denied the defendant's motion for a directed verdict on its counterclaims for breach of contract.[3]  The remaining claims and counterclaims were submitted to the jury; the jury found for the plaintiff on all of them, including in an advisory verdict on the G. L. c. 93A

---

[3] The judge considered the counterclaim for violation of the implied covenant of good faith and fair dealing to be part of the counterclaim for breach of contract.  No party objected to this approach.

5

counterclaim, and awarded damages of $6,588 to the plaintiff on its breach of contract claim. The judge adopted the jury's advisory verdict on the G. L. c. 93A counterclaim. Judgment entered accordingly.

The defendant moved timely for JNOV or, in the alternative, for a new trial. See Mass. R. Civ. P. 50 (b), as amended, 428 Mass. 1402 (1998). The plaintiff moved for an award of costs. The judge ordered a new trial unless the plaintiff accepted a remittitur reducing the damages awarded to the plaintiff by $2,000, but otherwise denied the defendant's motion. She allowed the motion for costs. The plaintiff accepted the remittitur, the first judgment was vacated, a new final judgment entered, and this appeal followed.

Discussion. 1. Motions for directed verdict and JNOV. a. Standard of review. When considering a challenge to a judge's ruling on a motion for a directed verdict or for JNOV, we ask "whether 'anywhere in the evidence, from whatever source derived, any combination of circumstances could be found from which a reasonable inference could be made in favor of the [nonmovant].'" O'Brien v. Pearson, 449 Mass. 377, 383 (2007), quoting Turnpike Motors, Inc. v. Newbury Group, Inc., 413 Mass. 119, 121 (1992). A reasonable inference must be "based on 'probabilities rather than possibilities' and not the result of 'mere speculation and conjecture.'" Poirier v. Plymouth, 374

6

Mass. 206, 212 (1978), quoting Alholm v. Wareham, 371 Mass. 621, 627 (1976).

b. Denial of defendant's motions for directed verdict and JNOV on plaintiff's claim for breach of contract. We do not agree with the defendant's contention that it was entitled to a directed verdict on this claim based on the plaintiff's own "material breach" of the oral contract for services. See Prozinski v. Northeast Real Estate Servs., LLC, 59 Mass. App. Ct. 599, 610 (2003) (material breach by one party excuses other party from performance). The conduct constituting the breach, as the defendant frames it, was that which resulted in the fountain damage and the plowing damage. The defendant's argument fails because the evidence, viewed in the light most favorable to the plaintiff, see O'Brien, 449 Mass. at 383, established that the damage in question was both accidental and not significant, such that it did not concern an "essential and inducing feature of the contract." Lease-It, Inc. v. Massachusetts Port Auth., 33 Mass. App. Ct. 391, 396 (1992), quoting Bucholz v. Green Bros. Co., 272 Mass. 49, 52 (1930) (defining "material breach"). See DiBella v. Fiumara, 63 Mass. App. Ct. 640, 644 (2005) ("insignificant or accidental" breaches are generally not material [emphasis added]). We think the defendant's argument particularly weak where both Donovan and

7

Valentin testified that Donovan had agreed to repair that particular damage. See id. at 646 n.7.

c. Entry of directed verdict against defendant on its counterclaim for abuse of process. The defendant's counterclaim for abuse of process depended on the defendant's ability to show that the plaintiff brought the suit against it "to accomplish some ulterior purpose for which [the process] was not designed or intended, or which was not the legitimate purpose of the particular process employed." Millennium Equity Holdings, LLC v. Mahlowitz, 456 Mass. 627, 636 (2010), quoting Quaranto v. Silverman, 345 Mass. 423, 426 (1963). We agree with the judge that even viewing the evidence in the light most favorable to the defendant as the nonmovant, see O'Brien, 449 Mass. at 383, it showed only that the plaintiff filed the small claim action to collect a balance that Valentin conceded was owed for landscaping and plowing services.

The defendant's argument that Donovan's failure to mention the settlement agreement or its "repair obligation" in its statement of small claim was evidence of the requisite ulterior or illegitimate purpose, see Millennium Equity Holdings, LLC, 456 Mass. at 636, is not persuasive. Even if the evidence permitted a reasonable inference that the plaintiff had a contractual "repair obligation," the abuse of process claim would nonetheless fail because there was no evidence of an

8

ulterior purpose -- the desire to recover money, even with a meritless claim, is not an ulterior motive in a suit for damages.  See Psy-Ed Corp. v. Klein, 459 Mass. 697, 713 (2011) ("ulterior purpose element is not satisfied merely by a showing that a person commenced litigation knowing it was groundless"). "Rather, the ulterior purpose must be to gain some collateral advantage," id. at 713-714, and there is no evidence of that in this case.

2.  Motion for a new trial.[4]  a.  Standard of review.  "The judge should only set aside a verdict as against the weight of the evidence when it is determined that the jury 'failed to exercise an honest and reasonable judgment in accordance with the controlling principles of law'" (citation omitted). O'Brien, 449 Mass. at 384.  Such an order is only appropriate where the judge is convinced that "the jurors allowed themselves to be misled, were swept away by bias or prejudice, or for a combination of reasons, including misunderstanding of applicable law, failed to come to a reasonable conclusion."  Meyer v. Wagner, 57 Mass. App. Ct. 494, 504-505 (2003), quoting W. Oliver Tripp Co. v. American Hoechst Corp., 34 Mass. App. Ct. 744, 748

---

[4] To the extent that the defendant's challenge to the ruling on the motion for a new trial also relies on a claim that it was entitled to jury instructions the judge declined to give, we are not persuaded for reasons we explain below.

(1993).  See Evans v. Multicon Constr. Corp., 6 Mass. App. Ct. 291, 295 (1978) ("the judge should not . . . nullify a jury's verdict by granting a new trial unless it appears on a survey of the whole case that otherwise a miscarriage of justice would result").

Our review of the judge's order denying the motion for a new trial is for an abuse of discretion, and where the motion was decided by the trial judge, we accord "considerable deference" to the judge's decision.  Gath v. M/A-COM, Inc., 440 Mass. 482, 492 (2003).  See W. Oliver Tripp Co., 34 Mass. App. Ct. at 747 ("the occasions on which appellate courts have thought to have been abused the broad discretion of a trial judge on such a motion are extremely rare; like snow storms in mid-May, such occasions may occur, but they induce considerable astonishment when they do").

b.  Counterclaim for breach of contract based on the settlement agreement.  "A settlement agreement is a contract and its enforceability is determined by applying general contract law."  Sparrow v. Demonico, 461 Mass. 322, 327 (2012).  "An enforceable agreement requires (1) terms sufficiently complete and definite, and (2) a present intent of the parties at the time of formation to be bound by those terms."  Targus Group Int'l, Inc. v. Sherman, 76 Mass. App. Ct. 421, 428 (2010).  It also requires a "manifestation of mutual assent, otherwise known

as a 'meeting of the minds.'"  Sea Breeze Estates, LLC v. Jarema, 94 Mass. App. Ct. 210, 215 (2018), quoting I & R Mechanical, Inc. v. Hazelton Mfg. Co., 62 Mass. App. Ct. 452, 455 (2004).

In this case, Donovan's testimony provided ample evidence to show that the parties did not reach a meeting of the minds on an essential term of the settlement agreement -- the scope of the plaintiff's obligation to repair the damages claimed by the defendant.  That evidence showed, and the jury found, that no contract was formed.  See Situation Mgt. Sys., Inc. v. Malouf, Inc., 430 Mass. 875, 878 (2000) ("It is axiomatic that to create an enforceable contract, there must be agreement between the parties on the material terms of that contract, and the parties must have a present intention to be bound by that agreement").  Where the defendant failed to prove that the settlement agreement was a contract, it necessarily failed to prove that the plaintiff breached the contract's terms.  Cf. Sea Breeze Estates, LLC, 94 Mass. App. Ct. at 216-218 (where there was no agreement on material terms, there was no breach).  The judge did not abuse her discretion in denying the defendant's motion for a new trial on this counterclaim.

c.  Counterclaim for negligence.  The judge denied the defendant's motion for a new trial on the second counterclaim, which alleged negligence, conditioned on the plaintiff's

11

acceptance of a remittitur.  See Mass. R. Civ. P. 59 (a), 365 Mass. 827 (1974).  The amount of the remittitur corresponded to the cost of repairing the damage that Donovan, in his testimony, admitted was caused by the plaintiff, and the plaintiff accepted the remittitur.

The defendant failed to introduce evidence to establish that the plaintiff's negligence was the cause of damage beyond the fountain damage and the plowing damage accounted for by the remittitur.  Additionally, the plaintiff introduced expert testimony to show that the more extensive landscaping problems, which the defendant attributed to the plaintiff's poor workmanship, could instead have been the result of weather conditions or disease.  As such, it was reasonable for the jury to conclude that the defendant had failed to prove that the plaintiff was responsible for harm beyond that for which Donovan accepted responsibility.  "It is a bedrock principle of negligence law that a [party] cannot and should not be held liable for a harm unless the [party] caused the harm."  Doull v. Foster, 487 Mass. 1, 6-7 (2021).  Given the state of the evidence, we are satisfied that the judge did not abuse her discretion in her ruling on the defendant's motion for a new trial on the counterclaim for negligence.

d.  Counterclaims for fraud and violation of G. L. c. 93A. The defendant's challenge to the denial of a new trial on its

12

third and fifth counterclaims, which alleged fraud and violation of G. L. c. 93A, respectively, is limited to an attack on the judge's exclusion of evidence relating to the parties' insurance.  Because, as we discuss in more detail below, we are satisfied that the judge's evidentiary ruling was not an abuse of discretion, we conclude that her denial of the motion for a new trial on these counterclaims was likewise within her discretion.

3. <u>Limitation on defendant's use of evidence of insurance</u>. We discern no abuse of discretion in the judge's rulings limiting the defendant's ability to introduce evidence of insurance in support of its counterclaims for fraud, abuse of process, and violation of G. L. c. 93A.  In general, a party may not show that an opposing party is insured against liability. <u>Goldstein</u> v. <u>Gontarz</u>, 364 Mass. 800, 808 (1974).  See Mass. G. Evid. § 411 (2025) (evidence of insurance coverage is not admissible "to prove whether the person or entity acted . . . wrongfully").  Although a judge has the discretion to admit evidence of insurance to prove, for example, ownership or a witness's bias, <u>Goldstein</u>, <u>supra</u> at 812 & n.13, the defendant has not provided us with any precedent for the admissibility of such evidence to show motive or intent in the context of a case

13

like this one,[5] nor are we aware of any.  Even if we were to conclude (as we do not) that the evidence at issue was otherwise admissible, the judge excluded it based on her determination that it was substantially more prejudicial than probative.  See Harris-Lewis v. Mudge, 60 Mass. App. Ct. 480, 485 (2004).  Mindful that "the rules regarding the inadmissibility of insurance exist so that juries will not be swayed by the fact that a deep-pocket insurance company has paid or will pay for the loss," Antoniadis v. Basnight, 99 Mass. App. Ct. 172, 177 (2021), we cannot say that the judge's assessment or the resulting ruling constituted an abuse of discretion.

Nor are we persuaded that the judge's ruling precluded the defendant from impeaching Donovan's credibility.  The judge permitted defense counsel to cross-examine Donovan using the notes from his interview on March 27, 2018, with an insurance claims adjuster, and (as the judge noted in her thorough written

---

[5] The defendant's reliance on Commonwealth v. Anolik, 27 Mass. App. Ct. 701 (1989), for this proposition is misplaced. Anolik is a criminal case in which the appealing party had been convicted of charges including burning a dwelling with the intent to defraud an insurer.  See id. at 702.  In that context, this court held that evidence related to insurance, including the division of the insurance proceeds after the fire and that the defendant had advised the homeowner to increase the insurance on the property before the fire, was admissible "to establish [the defendant's] motive, plan or intent" to commit the crimes.  Id. at 707.  Here, the defendant's counterclaims did not allege that the plaintiff attempted to defraud any of its insurers, making this case distinguishable from Anolik.

decision on the defendant's motion for a new trial) defense counsel "chose not to question Donovan relative to any statements made to his insurer before the March 26 meeting" with Valentin.

4. <u>Jury instructions</u>. As to jury instructions, Mass. R. Civ. P. 51 (b), 365 Mass. 816 (1974), provides, "No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection." The defendant's challenge to the judge's omission of certain of the defendant's proposed jury instructions fails because the defendant did not satisfy the requirements of this rule.

On the morning of the fourth day of trial, before recommencing the evidence, the judge provided counsel with draft jury instructions. At the morning break, the judge held a charge conference. Although at that time,[6] defense counsel raised concerns about the instructions that the judge did include in the draft, he did not object to the judge's omission from the draft of any of the defendant's proposed instructions on detrimental reliance, waiver, or estoppel. After the jury instructions had been given, defense counsel put on the record

---

[6] And later, when the judge provided a revised draft.

15

the fact of his objection to the judge's failure to give certain instructions that the defendant had proposed, including those the defendant focuses on here.  However, he did no more than note the absence of those instructions.  Absent a clear statement identifying for the judge the "grounds of [its] objection," Mass. R. Civ. P. 51 (b), the defendant's challenge to the judge's failure to give the omitted instructions is waived, and we do not consider it.

5.  Order allowing plaintiff's motion for costs.  Where the plaintiff prevailed on all claims except those it brought against the defendant for violation of G. L. c. 93A, and where that claim was dismissed with the plaintiff's assent, the judge did not abuse her discretion in allowing the plaintiff's motion for its litigation costs.  See Mass. R. Civ. P. 54 (d), as

16

appearing in 382 Mass. 821 (1980) ("costs shall be allowed as of course to the prevailing party unless the court otherwise directs").

Judgment dated April 19, 2024, affirmed.

By the Court (Blake, C.J., Hand & Toone, JJ.[7]),

*Paul Little*

Clerk

Entered:  March 5, 2026.

---

[7] The panelists are listed in order of seniority.

17