RENT CONTROL BOARD OF CAMBRIDGE *vs.* MARY
PRAUGHT.

No. 92-P-1421.

Middlesex. June 4, 1993. - September 10, 1993.

Present: KASS, JACOBS, & IRELAND, JJ.

*Rent Control*, Judicial review. *Subpoena. Cambridge. Municipal Corporations*, Rent control. *District Court*, Jurisdiction. *Real Property*, Ownership. *Attorney at Law*, Attorney-client relationship.

A District Court had jurisdiction pursuant to § 5(d) of the enabling act governing rent control in Cambridge, St. 1976, c. 36, over an action by the city's rent control board for enforcement of a subpoena it issued, and the case was properly in that court. [291-293]

In an action by a city's rent control board to enforce a subpoena issued in connection with a complaint to the board that a certain condominium unit (a "controlled rental unit") had been sold to an owner-occupant in violation of the city's removal permit ordinance, there was no merit to the defendant's contention that, since the unit had been conveyed to a nominee trust of which the occupant was the trustee, none of the individuals named in the complaint could have violated the ordinance and the board consequently lacked jurisdiction over them, where this contention assumed the conclusion that the trust represented property interests other than those solely of the trustee, which was precisely the issue contested in the underlying proceeding. [293-295]

In an action by a city's rent control board to enforce a subpoena to an attorney for the production of "[a]ny and all papers or other documents prepared or kept" by the attorney or her law firm concerning the conveyance of a particular condominium unit, this court concluded that, as an initial proposition, the board was entitled to the attorney's testimony and documents in her possession, but that, in responding to the board's subpoena, it would be open to the attorney to ask the board for a more precise description of the documents it seeks, to the end that privileged material might be protected. [295-297]

CIVIL ACTION commenced in the Cambridge Division of the District Court Department on August 16, 1991.

The case was heard by *Allen J. Jarasitis*, J., on a motion for summary judgment.

*Patrick W. Hanifin* for the defendant.

*Patricia A. Cantor* for the plaintiff.

KASS, J. Mary Praught, a lawyer, resisted a subpoena duces tecum from the rent control board of Cambridge for the production of "[a]ny and all papers or other documents prepared or kept" by her or her law firm concerning the conveyance of a condominium unit at 42 Linnaean Street. The board brought an action in the Cambridge District Court to enforce the subpoena and a judge of that court ruled that Ms. Praught was required "to comply with the subpoena." From the judgment entered so ordering, Ms. Praught has appealed.[1] We affirm.

Among the substantive arguments that Ms. Praught has raised are (1) the board lacks subpoena power over her and (2) the subpoena invades her client's lawyer-client privilege. Other arguments have produced procedural underbrush which we undertake to clear away as an initial matter.

1. *Jurisdiction of the District Court over an application for enforcement of a subpoena issued by the board.* Ordinarily, a tribunal authorized to summon, but not to compel, the attendance of witnesses may apply to a judge of the Superior Court or the Supreme Judicial Court for an enforcement order should it encounter resistance to a subpoena which it has issued. G. L. c. 233, § 10. However, under § 5(d) of the enabling act governing rent control in Cambridge, St. 1976,

---

[1]Ms. Praught first took an appeal from the judgment of the District Court to the Appellate Division of the District Court Department of the Northern District. That appeal was dismissed for want of jurisdiction based on St. 1976, c. 36, § 10(b), as amended by St. 1985, c. 399, § 3, the Cambridge rent control act, which directs that an appeal from a judgment entered by either the District Court or the Superior Court under the Cambridge rent control act shall be taken to the Appeals Court. We think the Appellate Division resolved the jurisdictional question correctly. Although § 10(b) mentions appeals from judgments under §§ 10 and 11 of the act specifically, the conferral on the District Court of powers under G. L. c. 233, § 10, to enforce subpoenas (see part 1 of the main text of this opinion, *infra*), is a further manifestation of the design of the act to grant to the District Court duties otherwise performed by the Superior Court. It is to be expected that the path of appeal would be that which leads from a judgment of the Superior Court, i.e., to the Appeals Court.

c. 36,[2] a judge of the District Court "shall have the same power as a justice of the Supreme Judicial or Superior Court to implement the provisions" of G. L. c. 233, § 10. The power to summon persons "to attend and testify" conferred by § 5(d) is in aid of the board's power to "make such studies and investigations, conduct such hearings, and obtain such information as is deemed necessary in promulgating any regulation, rule or order under this act, or in administering and enforcing this act and regulations and orders promulgated hereunder." This is highly inclusive language and brings within its scope rule making and adjudicatory activities of the board.

So plain is the language making the District Court available as a forum to the board for enforcement of its subpoena power[3] that it requires something of a tour de force to place the jurisdiction of the District Court so to do in doubt. Ms. Praught attempts that act of virtuosity as follows. In 1985, the Legislature added to § 5 of the Cambridge rent control act a subparagraph (f) which, in general terms, provided that the adjudicatory proceedings of the board were to be conducted conformably with the State Administrative Procedure Act, i.e., G. L. c. 30A. See St. 1985, c. 399, § 1. Under c. 30A, § 12(5), the forum for enforcement of subpoenas of an agency is the Superior Court. It follows, so Ms. Praught argues, that a subpoena of the rent control board of Cambridge can only be enforced by a judge of the Superior Court.

The syllogism is false. Nothing in the 1985 legislation limited the express assignment in § 5(d) of authority to the District Court to enforce subpoenas of the board. The specific

---

[2]Rent control had come to Cambridge under St. 1970, c. 842. By operation of § 13 of that act, rent control was of limited duration. The 1976 act continued the rent and eviction control program in Cambridge. See *Flynn* v. *Cambridge*, 383 Mass. 152, 154-155 (1981).

[3]Access to the District Court is consistent with St. 1976, c. 36, § 10, as amended by St. 1985, c. 399, § 3, which makes available a choice of the District Court or the Superior Court for judicial review of any action, regulation, or order of the board. Prior to the 1985 amendment, recourse was solely to the District Court. See n.1, *supra.*

provision in § 5(d) trumps the general provisions in § 5(f).[4] *Risk Mgmt. Foundation of Harvard Med. Insts., Inc.* v. *Commissioner of Ins.*, 407 Mass. 498, 505 (1990). *Bernstein* v. *Gramercy Mills, Inc.*, 16 Mass. App. Ct. 403, 409 (1983). 2B Singer, Sutherland Statutory Construction § 51.05 (5th ed. 1992). Indeed, the design of the 1985 legislation was to broaden, rather than to narrow, the avenues of judicial intervention. Judicial review, previously available only in the District Court in the first instance, was now to be available in the District Court or the Superior Court. See *Amari* v. *Rent Control Bd. of Cambridge*, 21 Mass. App. Ct. 598, 600 n.6 (1986). Cf. *Commonwealth* v. *Kapsalis*, 26 Mass. App. Ct. 448, 455 (1988). The District Court had jurisdiction over an application by the board for enforcement of its subpoena and the case was properly lodged in that court.

2. *Jurisdiction of the board and the court over the underlying administrative matter.* What had triggered these proceedings was a complaint to the board by Constance Thibaut, a self-appointed watchdog (and a member of the Cambridge Tenants' Union) who lived as a tenant at 42 Linnaean Street, that condominium unit 12A in her building had been sold without leave of a removal permit to an owner-occupant in violation of c. 8.44 of the City Code of Cambridge (the "Removal Permit Ordinance").[5] The "removal" of which the code speaks is the removal of a condominium unit from the category of a "controlled rental unit" as that term is defined in the rent control act. See St. 1976, c. 36, § 3(b). The parties do not dispute that, prior to the allegedly offending transaction, unit 12A was a controlled rental unit.

Unit 12A, when Thibaut lodged her complaint, was occupied by Kathryn Sammartano. The owner of record was

---

[4]Section 5(f), as inserted by St. 1985, c. 399, § 1, provides: "The provisions relating to adjudicatory proceedings in chapter thirty A of the General Laws, except for section nine and the provisions of paragraph (1) of the third paragraph of section fourteen which relates to the court in which judicial review may be sought, shall be applicable to the adjudicatory hearings held by the board."

[5]The sections of the Cambridge Code which are implicated are §§ 8.44.020(D)(1) and 8.44.040(A).

Kathryn Sammartano, trustee of C.V.D. Trust, a nominee trust established by a declaration of trust dated and recorded contemporaneously with the unit deed conveying title to Sammartano as trustee. Thibaut engaged Sammartano in neighborly conversation, during the course of which Sammartano unguardedly identified herself as the buyer of unit 12A. The idea of the parties, as advised by counsel, appeared to be that the trust constituted a sufficient intermediary to avoid the unit being owner-occupied for purposes of the Removal Permit Ordinance. Whether that was so would depend on who had the beneficial interest in the trust and what financial arrangements existed between the trust and the occupant.

In addition to Sammartano, the objects of the complaint of unlawful removal included four other persons: Richard S. Brown and Margaret Gerteis, who sold unit 12A to the trust, Ms. Praught, and Kathleen McCabe, another lawyer in the law firm with which Ms. Praught was connected. Ms. Praught argues that, as none of those individuals "owns" unit 12A and, thus, cannot have violated the Removal Permit Ordinance, neither the board nor a court has jurisdiction over the individuals. There is no merit to the argument because it assumes the conclusion that the trust represents property interests other than those solely of Sammartano. That is what the underlying controversy is about.

Record title is evidence of ownership, but not a decisive factor, particularly in the context of rent control. *Kinchla* v. *Rent Control Bd. of Brookline*, 25 Mass. App. Ct. 656, 658-659 (1988). For purposes of deciding whether an apartment is owner-occupied, beneficial ownership, rather than title, is the more relevant consideration. *Trovato* v. *Walsh*, 363 Mass. 533, 535 (1973). The function of the trustee of a nominee trust is perfunctory compared to the more copious duties of a trustee in the conventional fiduciary trust. *Penta* v. *Concord Auto Auction, Inc.*, 24 Mass. App. Ct. 635, 639 (1987). *Apahouser Lock & Security Corp.* v. *Carvelli*, 26 Mass. App. Ct. 385, 388 (1988). *In re Grand Jury Subpoena*, 973 F.2d 45, 48 (1st Cir. 1992). Birnbaum & Monahan, The

Nominee Trust in Massachusetts Real Estate Practice, 60 Mass.L.Q. 364, 364-368 (1976). To investigate the complaint made by Thibaut, the board necessarily had to direct its attention to Sammartano, who either was the real party in interest or would know who was. To the extent that a scheme may have been devised to sell controlled rental units to owner-occupants, the sellers were proper subjects of the complaint because they might have devised the scheme and then sold the idea. What the lawyers, as professional advisers, could add to the picture is a subject to which we shall turn later in this opinion. Sammartano was quite capable of being regarded as the owner of unit 12A within the meaning of the rent control act if it turned out that she owned the beneficial interest in the trust. She was not proof against complaint or subpoena, nor were the other persons connected with the transaction.

3. *Whether the lawyer-client privilege entitles Ms. Praught to resist the subpoena.* One may question what Ms. Praught, as the lawyer for the sellers, Brown and Gerteis, has to contribute to the proceedings and, therefore, the board's wisdom in enmeshing her in them.[6] Sammartano ought to know the answers to such pertinent questions as: who owns the beneficial interest in the trust; whether Sammartano pays occupancy charges to any one; from whom the money came to buy the unit; and who signed a promissory note in connnection with a mortgage loan, and in what capacity.[7] The sellers would know whether they had represented that a sale to a trust would shield a buyer against the

---

[6]There is reason to think that Praught also acted in some capacity on behalf of Sammartano, as the execution of the trust instrument establishing the C.V.D. Trust was acknowledged before Praught's law office associate, Kathleen McCabe. Ms. McCabe was, so far as the record shows, the only lawyer at the closing and she was able, in response to the board's request, to produce a copy of the schedule of beneficial interests in the C.V.D. Trust.

[7]The board further complicated the case by making it criminal in nature. Under the act it had the choice of bringing a civil action. The potential witnesses, e.g., Sammartano and the sellers, were all in a position to decline to answer on the ground that their answers might tend to incriminate them. It appears from the board's brief that in return for assurances

Removal Permit Ordinance and whether they had dealt with Sammartano as the buyer. The offer form, if any, the purchase and sale agreement, and the certificate of beneficial interests are documents available from Sammartano and the sellers. The unit deed was a matter of public record, as would be a mortgage or mortgages given by the trust, if any.

Whether it was sensible of the board to slap a subpoena on Ms. Praught is a question different from whether it lawfully could do so. The role of lawyer does not constitute a cloak of immunity against subpoena. *Commonwealth* v. *Anolik*, 27 Mass. App. Ct. 701, 709-710 (1989) (documents relating to a real estate transaction not privileged because they were meant to be passed along to third persons). *United States* v. *Klubock*, 832 F.2d 649, 657 (1st Cir. 1987). What the attorney-client privilege protects is communication between the lawyer and the client (privileged persons) made in confidence "[f]or the purpose of obtaining [on the part of the client] or providing [on the part of the lawyer] legal assistance for the client." Restatement of the Law Governing Lawyers § 118 (Tentative Draft No. 1, 1988). Legal advice by a lawyer to a client, in speech or in writing, is an example of privileged communication. See *id.* at § 119. So, by example, a letter from Ms. Praught to Sammartano about the legal consequences of the proposed transaction would be privileged if there were a lawyer-client relation between them (as there was between Praught and Brown and Gerteis). 1 Strong, McCormick on Evidence 329 (4th ed. 1992). See also Rice, Corr, & Drysdale, Attorney-Client Privilege in the United States §§ 5:1-5:18 (1993). Completed documents, such as an offer form, a purchase and sale agreement, a deed, a declaration of trust, or certificate of beneficial interest, i.e., the ultimate product of lawyer-client communications, but which exist to memorialize legal consequences to the parties to a transaction and to third persons, would not fall within the privilege. See *Commonwealth* v. *Anolik*, 27 Mass. App. Ct. at 710.

of immunity, the other persons summoned ultimately delivered documents to the board and gave testimony.

The board's subpoena is needlessly broad ("any and all . . . documents") but Ms. Praught cannot raise that issue simply by resisting the subpoena entirely. As an intitial proposition, the agency is entitled to Ms. Praught's testimony and documents in her possession. See *Finance Commn. of Boston* v. *McGrath*, 343 Mass. 754, 768 (1962); *Gardner* v. *Massachusetts Turnpike Authy.*, 347 Mass. 552, 562 (1964); *Massachusetts Commn. Against Discrimination* v. *Liberty Mut. Ins. Co.*, 371 Mass. 186, 192 (1976). Had Ms. Praught attacked the breadth of the subpoena or indicated the nature of the documents she thought privileged, the District Court judge who ruled on the board's application under St. 1976, c. 36, § 5, for enforcement of the board's subpoena would have had a basis for the exercise of his discretion, a discretion which Ms. Praught rightly points out the judge had. Instead Ms. Praught stood on the ground of a privilege to yield nothing whatever. That undiscriminating position, as we have said, was erroneous. See *Ward* v. *Coletti*, 383 Mass. 99, 110 (1981). In now responding to the board's subpoena, it will be open to Ms. Praught to ask the board to describe more precisely the documents it calls upon Ms. Praught to produce, to the end that material which is privileged, in terms of the criteria we have attempted to describe, may be protected.

*Judgment affirmed.*