Botsford, J.
Introduction
The plaintiff Carlos Brossard brings this case under G.L.c. 66, §10, the Public Records Law (PRL), and G.L.c. 66A, the Fair Information Practices Act (FIPA)[1] to gain access to certain documents in the custody of the defendant University of Massachusetts (the university). The university has moved for a ruling that the documents at issue are protected by the attorney-client and work product privilege[2] and not subject to disclosure to Brossard either as “public records” (G.L.c. 4, §7, clause 26) or as “personal data” (G.L.c. 66A, §1).
Some background information is necessary. Until some time in 1993, Brossard was employed to teach in the university’s College of Professional and Community Service. His contract was not renewed for the 1993-94 academic year, in circumstances that were vigorously contested by Brossard. Beginning in 1993, Brossard brought a number of lawsuits against the university and officers of the university.[3] In addition, the Massachusetts Society of Professors/FSU/MTA/NEA (“MSP”), the union which serves as the collective bargaining representative for faculty at the university, filed a grievance on Brossard’s behalf relating to the contract nonrenewal; the grievance is the subject of an arbitration proceeding that remains pending but unheard. In connection with the arbitration, Brossard and the MSP sought a variety of documents both through discovery and also through a public records request. The university produced many documents — it indicates over 2000 pages — but withheld others. Brossard and the MSP[4] then commenced the present case in Februaiy 1996 to obtain access to the withheld documents.[5]
Somewhat near the outset of the case, the parties litigated the question whether the university should be compelled to prepare an itemized log identifying the documents it was withholding from disclosure and detailing the exemptions it was claiming under the PRL (or otherwise) to justify the nondisclosure.[6] The university was ordered to prepare the log, and it did so with several amendments, ultimately submitting a “revised exemptions log” and “supplement to exemptions log”[7] (referred to collectively as “log”). The university’s log refers to specific exemptions in the definition of a public record, see G.L.c. 4, §7, clause 26(c), (d), (f), but also indicates that the university is claiming the documents withheld are exempt from disclosure because they are protected by the attorney-client privilege and, in the case of some documents, the work product privilege.[8]
The university has brought its present motion for a ruling on the applicability of the attorney-client and work product privileges as a means of bringing this case to a close.[9] The university has represented through counsel that it does not seek to rely on the specific statutory exemptions set out in its log; I understand that the university, in effect, is waiving these statutory exemptions. At least insofar as Brossard’s claim under the PRL is concerned, therefore, a ruling on the applicability of the attorney-client and work product privileges will resolve it.[10] Accordingly, I consider the university’s contention that it may withhold the documents still in dispute on the grounds that they are protected by the attorney-client privilege, the work product privilege, or both.
Brossard’s claim under FIPA is distinct from his claim under the PRL. However, Brossard raises it as an alternative basis for providing him with access to the documents the university has withheld on grounds of privilege, and Brossard has indicated at one or more hearings that he seeks a ruling on the claim. Since the same documents are at issue, it is appropriate to consider the FIPA claim at this time.
Discussion
1. The Attorney-Client and Work Product Privileges
Documents held by a public agency like the university generally qualify as public records subject to disclosure. See G.L.c. 66, §10(c). The definition of “public records” in G.L.c. 4, §7, clause 26 contains twelve separate exemptions, but as all acknowledge, none of them incorporates or pertains to the attorney-client or work product privilege. Relying on the ab *473 sence of an express exemption for either privilege in this statutory definition and on her view of the language, structure and purpose of the PRL, the supervisor of public records previously interpreted the statute as abrogating common law privileges such as attorney-client and work product in connection with records held by public agencies. See, e.g., Determination Letter of the Supervisor of Public Records, SPR 96-599 (March 3, 1997), attached to the university’s memorandum; Determination Letter of the Supervisor of Public Records, SPR 95/146 (June 2, 1997), submitted by Brossard in support of his position in this case. The supervisor of public records, however, appears more recently to have abandoned this interpretation. [11] Neither appellate court in Massachusetts has ruled directly on the question whether the PRL bars a custodian of a public record from asserting the attorney-client or work product privilege as a basis for refusing to disclose a particular record or portion thereof. Cf. Judge Rotenberg Educ. Center, Inc. v. Commissioner of the Dept. of Mental Retardation (No. 1), 424 Mass. 430, 457 n. 26 (1997) (implicitly assuming that state agency may assert attorney-client privilege to protect documents against disclosure where they contain communications between lawyer and client for purpose of obtaining legal advice). ■
As I have previously indicated to the parties in this case despite the absence of an exemption in the PRL for documents that fall within the protection of the traditional attorney-client or work product privilege, I conclude that the statute should not be read as barring a public records custodian from asserting these privileges in appropriate circumstances. I reach this conclusion for the following reasons.
The attorney-client privilege is a common law “principle of long standing.” Purcell v. District Attorney for the Suffolk District, 424 Mass. 109, 111 (1997), citing Foster v. Hall, 12 Pick. 89, 93 (1831). The work product privilege, now codified in Mass.R.Civ.P. 26(b)(3), is also a well-rooted common law rule. See, e.g., Ward v. Peabody, 380 Mass. 805, 817 (1980). The Supreme Judicial Court in the past has found that a public client is entitled to assert the attorney-client privilege, see Vigoda v. Barton, 348 Mass. 478, 485-86 (1965),[12] and that a public lawyer can claim the protection of the work product privilege in connection with anticipated or ongoing litigation. See Commonwealth v. Fall River Motors Sales, Inc., 409 Mass. 302, 308-09 (1991).
There are compelling reasons why this should be so. The attorney-client privilege is “founded on the necessity that a client be free to reveal information to an attorney, without fear of its disclosure, in order to obtain informed legal advice.” Purcell v. District Attorney for the Suffolk District, supra, 424 Mass, at 111. See Upjohn v. United States, 449 U.S. 383, 389 (1981). The work product privilege in turn is “intended to enhance the vitality of the adversary system" by protecting counsel’s work in preparing the case from intrusion and interference. Commonwealth v. Fall River Motors Sales, Inc., supra, 409 Mass. at 308-09. Governmental agency clients just as much as private clients have a need for prudent and intelligent legal advice to guide them in their official business, which is, after all, business conducted for the benefit of the public. See, e.g., In re Grand and Jury Subpoena Duces Tecum, 731 F.2d 1032, 1036 (2d Cir. 1984) (“the availability of sound legal advice [which the attorney-client privilege is intended to enhance the ability of lawyers to give] inures to the benefit not only of the client . . . but also of the public which is entitled to compliance with an ever growing and increasingly complex body of public law”). In addition, public agencies are by necessity involved in myriad types of litigation, and the public attorneys representing them obviously depend on all the same rules and principles designed to advance a fair and effective adversary system as do private attorneys with private clients.
The long tradition and continuing significance of these two common law privileges cannot be ignored. An established rule of statutory interpretation counsels that in construing statutes, courts should not “presume that the Legislature intended ... a radical change in the common law without a clear expression of such intent." Kerins v. Lima, 425 Mass. 108, 110 (1997) (citation omitted), and cases cited.[13] To read the PRL as rendering wholly inapplicable the attorney-client and work product privileges to documents held by public agency custodians would constitute a significant departure from the common law as well as established public policy. It should not be presumed without clear evidence of a legislative intent to travel in this direction.
The definition of “public records” in G.L.c. 4, §7, clause 26[14] was enacted in essentially its present form in 1973. St. 1973 c. 1050. Before that time, the definition of the term — which first appeared in statutory form in 1897 — had focused on whether the entry in issue was required by law to be made. See Attorney General v. Collector of Lynn, 377 Mass. 151, 152-53 (1979); Town Crier, Inc. v. Chief of Police of Weston, 361 Mass. 682, 685-86 (1972).[15] The 1973 amendment greatly broadened the definition of public records, but there is nothing in the statutory language adopted in 1973 reflecting a legislative intent to abrogate or affect in any way the attorney-client privilege or work product rule as they may pertain to public records. Nor does the legislative history of the amendment contain an expression or suggestion of such intent.[16] In the absence of clear evidence of a purpose or intention on the Legislature’s part to abolish these privileges, I am unwilling to read the PRL as effecting this result.
A recent decision by another judge of this court has concluded that the attorney-client privilege remains applicable to documents held by public agency custodians. See Town of Wellesley v. D&C Const. Co., Inc., C.A. No. 97-2212 300 (Norfolk Superior Court, *474 Memorandum of Decision and order dated March 31, 1998) (Doerfer, J.), 8 Mass. L. Rptr., 1998 WL 151078. I am persuaded by the reasoning and discussion in that decision, and adopt it here. There are two other recent decisions considering the work product privilege in the context of the PRL. See General Electric Co. v. Massachusetts Dept. of Environmental Protection, C.A. No. 98-1769-3 (Suffolk Superior Court, Memorandum of Decision and Order dated June 15, 1998) (Hinkle, J.), 8Mass. L. Rptr. 417; Antell v. Harshbarger, C.A. No. 97-3518-C (Suffolk Superior Court, Memorandum dated August 14, 1997) (Hinkle, J.). In both of these decisions Judge Hinkle concluded that the PRL should not be read to bar a public agency or officer from raising the work product privilege as a basis for withholding a document that would otherwise be a public record, despite the absence of a specific statutory exemption on point. I also agree with and adopt the reasoning of these decisions.[17]
Two additional points. First, as the university notes, in Brossard’s capacity as a party to litigation, he is not entitled to discover any documents or records which fall within the scope of attorney-client or work product privilege. The same rule applies to every civil litigant. If the PRL is read to abrogate the work product and attorney-client privileges, however, the result would be that any litigant in a case against a public agency could effect an end run around the discovery limitations imposed by court (or arbitration) rules simply by serving a public records request on the agency involved in the lawsuit. Moreover, the litigant could obtain the otherwise privileged documents with no obligation to allow reciprocal access to its own privileged documents. Certainly one would expect the Legislature to mark such a dramatic change in established practice and policy by express language.
Second, with respect to the attorney-client privilege, a discussion of the court’s decision in District Attorney for the Plymouth District v. Board of Selectmen of Middleborough, 395 Mass. 629 (1985), is warranted. That case concerned a claim that the board of selectmen had violated the Open Meeting Law, G.L.c. 39, §§23A-23C, by holding a closed meeting (executive session) with its attorney to discuss a proposed rubbish disposal contract. The Open Meeting Law at that time contained seven specific exceptions to the general prohibition against closed meetings of governmental bodies. G.L.c. 39, §23B (1984 ed.JThe defendant board conceded that meeting privately with its attorney to discuss the proposed contract did not come within any of the exceptions, but argued that there was, or should be, an implied exception for meetings between a governmental body and its counsel to enable the lawyer to offer legal advice and opinions in confidence. 395 Mass. at 632. The court disagreed, stating that while it assumed a governmental body, as a public client, has an attorney-client privilege, the “unambiguous” language and structure of the Open Meeting Law made clear that no exceptions beyond those stated in the statute were to be implied. Id. at 632-33 and n. 4. The court also referred to the rule of statutory construction stating that where express exceptions exist, no other exceptions should be implied. Id. at 633, citing 2A C. Sands, Sutherland Statutory Construction, §47.11 (4th ed. 1984).
The PRL presents a different situation. The Open Meeting Law exceptions contain one which relates relatively directly to confidential communications between attorneys and their public clients, G.L.c. 39, §23B(3) (permitting executive session to “discuss strategy with respect to collective bargaining or litigation) and several which more indirectly do so. See id., §23B(5), (6), (9) (1996 ed). The court in the Board of Selectmen of Middleborough case noted §23B(3) in particular in ruling that no further exceptions for meetings between attorneys and public clients should be grafted on to that statute. 395 Mass. at 633. None of the exemptions in the PRL offers any comparable connection to the attorney-client privilege. There may be instances where documents containing privileged legal communications between a public client and its attorney will be covered by the exemption for inter-agency or intra-agency memoranda or letters concerning policy positions being developed by the agency. See G.L.c. 4, §7, clause 26(d). However, this exemption ceases to operate once the policy position is established. See Babets v. Secretary of Human Services, 403 Mass. 230, 237 n. 8 (1988). See also Judge Rotenberg Educ. Center, Inc. v. Commissioner of the Dept. of Mental Retardation (No. 1), supra, 424 Mass. at 457 n. 26.[18] While it certainly may be argued that the rule of statutory construction discouraging implied exceptions where express exceptions exist, cited in the Board of Selectmen of Middleborough case, should apply with equal force to the PRL, rules of statutory construction are not always followed where the negative consequences of doing so are great. See, e.g., Mailhot v. Travelers Ins. Co., 375 Mass. 342, 348 (1978) (rejecting application of related rule of construction, ’’espressio unius est exclusio alterius," which court described as “at most a fallible aid to decision”). Such is the case here.
In sum, I believe the PRL and the statutory definition of “public records" in G.L.c. 4, §7, clause 26, do not bar application of the attorney-client and work product privileges, and thus permit a public agency to assert one or both as a basis for withholding disclosure of such privileged documents in its custody.[19]
Nevertheless, a determination that the privileges are applicable to the PRL does not resolve whether in this case the university is justified in withholding the documents at issue. The privileges must be construed narrowly. See Judge Rotenberg Educ. Center, Inc. v. Commissioner of the Dept. of Mental Retardation, supra, 424 Mass. at 457 n. 26. This is particularly so because the PRL presumptively deems all records held by public agencies to be public. G.L.c. 66A, § 10(c).
*475 Following receipt of my letter of June 9, 1998, the university decided to release additional documents to Brossard. A substantial number of documents remain withheld, all described in the log. The dates of the contested documents range from 1991 into 1996, but most of the documents seem to have been written in 1992 and 1993.
It appears that a good majority of the documents constitutes memoranda from Lawrence Bench, Esquire, an attorney employed by the university as one of its “in-house” counsel. The recipients of these memoranda were university officials: the university provost, the chancellor, staff members in the provost’s or chancellor’s office, and other administrators. The university represents in its memorandum dated July 30, 1998, that Lawrence Bench was serving as the legal adviser to the provost, the chancellor, the director of affirmative action and other administrators in dealing with the variety of pending matters concerning Brossard.[20] The various memoranda bear this characterization out.
Many of the memoranda written by Bench represent letters to be sent by a particular official or administrator to Brossard, or a draft decision on some aspect of the pending matters between Brossard and the university. These drafts were sent by Bench to the appropriate official administrator for review.
“What the attorney-client privilege protects is communication between the lawyer and the client (privileged persons) made in confidence ‘[f]or the purpose of obtaining [on the part of the client] or providing [on the part of the lawyer] legal assistance for the client.’ ” Rent Control Bd. of Cambridge v. Praught, 35 Mass.App.Ct. 290, 296 (1993), quoting Restatement of the Law Governing Lawyers §118 (Tent. Draft No. 1 1988). A review of the draft letters and other draft documents sent by Bench to university administrators reveals that as drafted, they are all explicitly or implicitly designed to provide legal assistance in handling the various disputed matters between the university and Brossard. See Andritz Sprout-Bauer, Inc. v. Beazer, Inc., 174 F.R.D. 609, 633 (M.D. Pa. 1997) (draft documents prepared by counsel are privileged if prepared for purpose of providing or obtaining legal advice and if they contain information or comments not included in the final version).
It is the case that ”[c]ommunications between an attorney and his client are not privileged, though made privately, if it is understood that the information communicated is to be conveyed to others.” Peters v. Wallach, 366 Mass. 622, 627 (1975). See Commonwealth v. Anolik, 27 Mass.App.Ct. 701, 710 (1989). Insofar as the final version of letters or decisions which were ultimately sent to Brossard were identical to the drafts that Bench prepared, the drafts would not be privileged, and must be disclosed. See Andritz Sprout-Bauer, Inc. supra. See also Schenet v. Anderson, 678 F.Sup. 1280, 1283-84 (E.D. Mich. 1988). Cf. Rent Control Bd. of Cambridge v. Praught, supra. 35 Mass.App.Ct. at 296 (”[c]ompleted documents, such as an offer form, a purchase and sale agreement, a deed, a declaration of trust, or certificate of beneficial interest, i.e., the ultimate product of lawyer-client communications, but which exist to memorialize legal consequences to the parties to a transaction and to third persons, would not fall within the privilege”); Commonwealth u. Anolik, supra 27 Mass. at 709-10 (real estate agreements governing transfer of property from third party to lawyer’s client, and an insurance claim form filed with insurance company, were “not privileged communications because they were not intended to stop with the lawyer as a confidence, but were meant to be passed along to third persons”).
I do not have copies of any correspondence between the university and Brossard. However, the university must review that correspondence and compare it with the withheld drafts. Following that review, the university must disclose to Brossard any drafts or segregable portions of drafts which are identical to the final versions sent to Brossard.
Additional documents withheld by the university are notes and memoranda addressed to Bench from various university officials and administrators; these all appear to be seeking legal advice or assistance in handling Brossard, and are privileged. There are also handwritten notes prepared by Bench and summarizing telephone conversations, meetings or hearings concerning Brossard. Some of these constitute summaries of conversations or meetings with university administrators in which legal advice was sought, or provided, or both; these are protected by the attorney-client privilege. Others represent privileged attorney work product that was prepared in connection with, or anticipation of, still pending litigation — either the arbitration, or the current lawsuit relating to Brossard’s document and record requests.[21]
Finally, some of the withheld documents are letters or other communications between Lawrence Bench and attorneys at Day, Berry & Howard, the outside counsel representing the university in the pending arbitration proceeding with Brossard. These documents are covered by the attorney-client and work product privileges, because they reflect communications relating to the legal advice and representation which outside counsel was providing, and also reflect work product of the various attorneys involved in defending the university in the arbitration matter.
As indicated in my letter of June 9, 1998, there is a document identified by the Bates stamp number 3446. (See p. 25 of the revised exemptions log, last entry.) This document, which appears to be a note of a telephone conversation between Lawrence Bench and Brossard’s then attorney for one matter, Bruce Carroll, Esquire, certainly does not qualify for protection under the attorney-client privilege, and nothing about it indicates that it would currently qualify for *476 work product privilege protection either. This document must be disclosed.
Brossard has argued that even if the attorney-client and work product privileges apply to the withheld documents, the university is obligated to disclose any segregable portions of each of those documents. See G.L.c. 66A, §10(a). See also Reinstein v. Police Comm’r of Boston, supra, 378 Mass. at 287-88. Other than any drafts which contain segregable portions that are identical to the final versions sent to Brossard (see p. 20 above), I agree with the university that the withheld documents do not contain segregable portions.
2. The Claim under FIPA
Brossard claims that he is entitled to have access to all the documents at issue under FIPA. His argument is that these documents constitute “personal data," that he is the “data subject” and the university is a “holder,” and that as such, the university has an obligation to make the data “fully available to him or his authorized representative, upon his request ..." G.L.c. 66A, §2(1).
I disagree. It is true that the definition of “personal data” in G.L.c. 66A, §1 is very broad.[22] However, it appears that for public institutions of higher education such as the university, “personal data” is defined as:
Any data regarding an individual, including, but not limited to personal identifiers, which relate to the examination, care, custody, treatment, support or rehabilitation of the individual, medical, psychological, psychiatric, social, financial and vocational data, and which is normally contained in case files, personnel files, or similar files . . .
610 Code Mass. Regs. §10.02, “Personal data.” The withheld documents, most of them representing drafts, notes, and memoranda to or from Lawrence Bench, do not fit within the scope of this definition, even though they relate to Brossard.
More generally, the structure of FIPA indicates that its requirement to make “personal data" available to a data subject applies to “personal data” which is held in a “personal data system,” a term defined in the statute as “a system of records containing personal data, which system is organized such that the data are retrievable by use of the identity of the data subject." There is no indication that the withheld documents are organized and held by the university in a discrete record keeping or record retrieval system that would permit the documents to be retrieved by use of Brossard’s name or any other personal identifying information such as social security number. See A. Celia, Administrative Law, §1254, p. 630 (1986) (suggesting that where agency is not able to retrieve personal data by use of the identity of the data subject, the agency cannot be said to be maintaining the data in a personal data system, and would not be subject to the requirements of FIPA). Brossard is not entitled to the withheld documents under FIPA, and there is no showing that the university has violated FIPA by refusing access to Brossard.
ORDER
1. For the foregoing reasons, in response to the defendant University of Massachusetts’s request for a ruling, it is ordered and declared that the defendant is entitled to withhold disclosure of the documents which are described in its “revised exemptions log” and “supplement to exemptions log” filed with the court on July 10, 1998, and which have not been disclosed to date, except that (a) any drafts or segregable portions of drafts which are identical to the final versions of the same documents sent or released to Brossard; and (b) the document with the Bates stamp number 3446, are to be disclosed, and a copy provided, to the plaintiff Carlos Brossard within ten business days of the date of this order.
2. It is further ordered that a final judgment enter in this case as follows;
a. As to Count I of the complaint, a declaration of the rights of the parties as set forth in Paragraph 1 of this Order; and
b As to Count II of the Complaint, in favor of the defendant University of Massachusetts, and dismissing that count.

Jurisdiction over the FIPA claim is conferred by G.L.c. 214, 3B.

See note 9 below.

Carlos Brossard v. Sherry Penney et al., Middlesex Superior Court, C.A. No. 93-0174; Carlos Brossard v. Board of Trustees of the University of Massachusetts et al., Middlesex Superior Court, C.A. No. 95-5232; Carlos Brossard v. Sherry Penney et al., Middlesex Superior Court, C.A. No. 96-5217.1 am informed that the first of these cases was dismissed without the defendants having been served, and that the other two were dismissed on other grounds. I am further informed that Brossard has filed notices of appeal in the second two cases.

Brossard and the MSP originally were both plaintiffs in this case. In March of 1997, the MSP withdrew as a plaintiff. Brossard represents himself in this action.

The arbitration has not yet been heard, apparently because of this case.

The log was sought by Brossard in connection with his public records claim. See Reinstein v. Police Comm’r of Boston, 378 Mass. 281, 295 (1979). Brossard’s claim under FIPA has taken a back seat in this case until very recently.

Brossard challenged, and continues to challenge, the sufficiency of the log prepared by the university, but the university has never been ordered to supplement.

As reflected in the log, the university’s principal privilege claim in relation to the documents currently at issue is the attorney-client. It asserts exemption from disclosure under the work product privilege for relatively few documents, and for the most part, each claim of work product privilege joins a claim of attorney-client privilege.

On rereading the university’s motion for a ruling concerning privilege, I note that the university originally focused on the attorney-client privilege in connection with the withheld documents. However, in my letter to the parties dated June 9, 1998,1 considered both privileges because both had been *477 claimed in the university’s log. In its latest memorandum filed on the privilege issue, dated July 30, 1988, the university does address both privileges. Brossard’s opposition to the university’s position in this case primarily centers on the point that the PRL contains a set of specific exemptions to the presumptive designation of documents in the custody of public agencies as public records, and these exemptions do not cover either the attorney-client or work product privilege. That opposition applies with equal force to each of the privileges at issue, and Brossard has never appeared to treat the university’s motion as concerning only the attorney-client privilege. In light of all these circumstances, I consider both privileges here.

Brossard challenges the propriety of the university’s motion on procedural as well as substantive grounds. With respect to procedure, he argues that (1) the university did not comply with Superior Court Rule 9A in filing the motion; and (2) the university through its counsel cannot assert the privilege — that only the actual custodian of each record may claim it. The arguments must be rejected. On the Rule 9A issue, I believe we established a special filing schedule and procedure for the motion back in the spring of 1997 which rendered Rule 9Ainapplicable to it, but in any event, Brossard certainly has had sufficient notice and an opportunity to respond to the motion. As for Brossard’s argument that the university through counsel cannot itself raise claims of privilege, the contention is incorrect. The case on which Brossard relies, In re Sealed Case, 856 F.2d 268, 271 (D.C. Cir. 1988), was considering a specific law enforcement investigative privilege being claimed by the Securities and Exchange Commission, and the court’s discussion was focused on the showing necessary for assertion of that particular privilege, not of privileges generally. The attorney-client privilege at issue in this case belongs to the university itself, and may properly be raised by its counsel. The university’s lawyer is also the appropriate parly to assert the work product privilege on the university’s behalf.

A recent case before the Supreme Judicial Court involved in part a challenge to the supervisor’s opinion that the PRL abrogated the attorney-client and work product privileges. Commonwealth Automobile Reinsurers v. Supervisor of Public Records, Supreme Judicial Court for Suffolk County, No. SJ-97-0383. The supervisor was represented by the Attorney General in that case, and the Attorney General agreed with the plaintiff that the PRL does not abrogate either of the common law privileges in connection with documents held by public agencies. In light of the agreement, there was no case or controversy subject to adjudication, and the supervisor, through the Attorney General, moved to dismiss the count of the complaint challenging the previous interpretation of the PRL. A single justice of the Court allowed the motion.

Compare District Attorney for the Plymouth District v. Board of Selectmen of Middleborough, 395 Mass. 629, 632 n. 4 (1985), where the court stated it would assume without deciding that public clients have an attorney-client privilege.

There is a related rule of construction which also is relevant here: “Statutes are not to be interpreted so as to require a radical change in established public policy if the language does not manifest an intent that such change is to be effected.” Roberge's case, 330 Mass. 506, 509 (1953).

The definition provides in relevant part: “ ‘Public records’ shall mean all books, papers ... or other documentary materials or data, regardless of physical form or characteristics, made or received by any officer or employee of any agency, executive office, department, board, commission, bureau, division or authority of the commonwealth . . . unless such materials or data fall within the following [stated] exceptions . . .” G.L.c. 4, §7, clause 26.

The statute was amended in 1969, but the amendment did not affect the core provision in the original definition. See Town Crier Inc. v. Chief of Police of Weston. 361 Mass. 682, 686-90 (1972).

A quite lengthy review of the pertinent legislative history is detailed in the Superior Court decisions cited in the text immediately below, particularly those of Judge Hinkle. I see no benefit in repeating the review here, since the parties have copies of the cited decisions.

In both decisions, Judge Hinkle reviews aspects of the legislative history of the definition of “public records.” Her discussion focuses on the portions of that legislative history which might arguably be significant in determining the relationship between the work product privilege and the PRL. My own review of the history reveals that the aspects highlighted by Judge Hinkle are also the only portions which may be thought to bear on the issue whether the attorney-client privilege applies to documents held by a public record custodian. For the reasons discussed by Judge Hinkle in relation to the work product privilege, I do not believe that the failure of the Legislature to enact the proposed exemption (k) or the differences between the Massachusetts PRL and the Federal Freedom of information Act necessarily manifest a legislative intent to abrogate the attorney-client privilege.

I am aware that at times attorney work product related to ongoing litigation is deemed to fit within the exemption in G.L.c. 4, §7, clause 26(d), with the agency’s position in the pending litigation being considered a developing "policy position.” But as indicated in the text, this exemption will never apply to attorney-client communications that relate either to completed litigation or adopted “policy positional. ”

In another context, distinctions have been suggested between the appropriate scope of the attorney-client privilege as applied to public clients on the one hand and private clients on the other, with the recommendation being made that the privilege should operate in a much more narrow fashion for public clients. Compare Proposed Mass. R. Evid. 502(b) with id., 502(d)(6). See Advisory Committee’s Note to Proposed Mass. R. Evid. 502(d)(6). It would be inappropriate for a court at this time to impose a similar limitation on the application of either the attorney-client or work product privilege to the PRL, because this is a matter for the exercise of legislative judgment. All I conclude here is that in the absence of any mention of the attorney-client or work product privilege in the PRL or any sign in the statute’s history that the Legislature was addressing either privilege, there is no reason to believe the Legislature intended the statute to abrogate or affect in any way the operation of either common law privilege in the context of public records.

The matters included the following. At some time before the spring of 1992, Sienora Haynes, a part-time student and part-time employee of the university, made a complaint against Brossard, alleging sexual harassment. The matter was ultimately settled in that spring, and the complaint withdrawn. Thereafter, in the summer or fall of 1992, Haynes made another complaint, alleging that Brossard was harassing her in retaliation for her previous charge. This was contested by Brossard, and was heard by a “sitting panel” pursuant to the university’s policy on sexual harassment. The sitting panel concluded in a report that Brossard had violated the sexual harassment policy, a determination in which the provost concurred in a memorandum of decision dated March 16, 1993. The chancellor thereafter denied Brossard’s appeal. Brossard was suspended from his teaching position in the spring of 1993, and as indicated at the outset, the university did not renew his teaching contract for the following academic year. The MSP then filed a grievance on behalf of Brossard, which remains the subject of the still pending arbitration proceeding.

Handwritten research notes have been withheld as well. These are protected by the work product privilege.

“ ‘Personal data,’ any information concerning an individual which, because of name, identifying number, mark or description can be readily associated with a particular individual; provided, however, such information is not contained in a public record as defined in [G.L.c. 4, §7, clause 26] and shall not include intelligence information, evaluative information or criminal offender record information as defined in [G.L.c. 6, §167].” G.L.c. 66A, §1, “Personal data.”